**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| JONATHAN M. ORSZAG, | ) | No. 1:26-mc-91074 |
| | ) | |
| Movant, | ) | <u>Underlying Litigation</u> |
| | ) | *FTI Consulting, Inc. v. Jonathan M. Orszag* |
| v. | ) | */ Jonathan M. Orszag v. FTI Consulting,* |
| | ) | *Inc. & Steven Gunby*, No. 8:23-cv-3200 |
| CRA INTERNATIONAL, INC., | ) | BAH-AAQ in the United States District |
| | ) | Court for the District of Maryland, |
| Respondent. | ) | Greenbelt Division |
| | ) | |

**<u>MEMORANDUM AND ORDER ON MOTION TO COMPEL</u>**
**<u>COMPLIANCE WITH SUBPOENA</u>**

**KOBICK, J.**

This discovery dispute arises out of ongoing litigation in the U.S. District Court for the

District of Maryland between Jonathan M. Orszag and his former employer, FTI Consulting, Inc.,

and Steven Gunby, FTI's Chief Executive Officer. FTI is the parent company to Compass Lexecon,

an economic consulting firm that Orszag founded. After FTI learned that Orszag intended to resign

and start his own economic consulting firm, it terminated him and sued him for violations of his

employment agreement and breaches of his fiduciary duties. FTI claimed damages in the form of

increased compensation paid to retain FTI employees in the wake of Orszag's attempt to start a

competing firm. Orszag denied FTI's allegations and brought counterclaims against FTI and

Gunby, claiming they breached his employment agreement by fabricating cause to fire him and

tortiously interfered with his business to prevent him from exercising his right to compete.

Orszag then served a subpoena under Federal Rule of Civil Procedure 45 on non-party

CRA International, Inc. d/b/a Charles River Associates ("CRA"), which is a Massachusetts-based

competitor of both FTI and Orszag's new consulting firm. The subpoena seeks documents and

communications relating to CRA's job offers and discussions with three senior FTI executives as well as CRA's economic modeling of its competitors. After CRA served its responses and objections to the subpoena and produced only a limited portion of the discovery requested, Orszag filed a motion in this Court to compel CRA's compliance with the subpoena. CRA opposes that motion. For the reasons that follow, Orszag's motion will be granted in part and denied in part.

## BACKGROUND

Orszag was a founder and senior executive of Compass Lexecon, an economic consulting firm owned by FTI. ECF 2, at 4. His multi-year employment at Compass was governed by an agreement with FTI that permitted him to resign and compete at any time, subjecting him to a non-competition restriction only if FTI terminated him for cause after first providing him with notice and an opportunity to cure. *Id.* at 4-5. Under his leadership, Orszag asserts, Compass "thrived." *Id.* at 4. However, after FTI made "a series of disastrous business decisions that injured Compass," Orszag informed Gunby in the fall of 2023 that he intended to resign from Compass and FTI to start a new firm. *Id.*

Soon after, on November 20, 2023, FTI fired Orszag and sued him in Maryland state court, seeking to enforce the non-competition provision in his employment agreement and claiming that he violated a non-solicitation clause and misused confidential information. *Id.* at 5.[1] FTI alleges that Orszag "'repeatedly threatened to start a competing firm immediately upon his departure, solicited other senior professionals and employees of Compass Lexecon to leave with him to start such a competing firm, disparaged FTI, and threatened to harm FTI's economic consulting

---

[1] FTI filed its complaint on November 20, 2023. ECF 3, *FTI Consulting, Inc. v. Orszag*, No. 8:23-cv-03200-PJM (D. Md.). It then filed a first amended complaint on December 1, 2023, ECF 7, *Orszag*, No. 8:23-cv-3200-PJM, and a second amended complaint on June 18, 2024, ECF 48, *Orszag*, No. 8:23-cv-3200-PJM. On January 2, 2026, it filed a motion for leave to file a third amended complaint, which remains pending. ECF 177, *Orszag*, No. 8:23-cv-3200-PJM.

business,'" in violation of his employment agreement and fiduciary duties. *Id.* at 6-7 (quoting ECF 48, *FTI Consulting, Inc. v. Orszag*, No. 8:23-cv-3200-PJM (D. Md.)). FTI further alleges that Orszag "'used FTI's and Compass Lexecon's confidential information,' including estimates of Compass Lexecon's revenue and expenses, revenue generated directly by senior professionals, and employee compensation information." *Id.* at 7 (quoting ECF 48, *Orszag*, No. 8:23-cv-3200-PJM). FTI claims that these violations resulted in damages in the form of "increased compensation . . . paid to retain Compass Lexecon professionals." *Id.*

On November 22, 2023, Orszag removed the case to the U.S. District Court for the District of Maryland, denied FTI's allegations, and brought counterclaims against FTI and Gunby. *Id.* at 4 n.1. The counterclaims allege that FTI and Gunby "fabricated '[c]ause'" for Orszag's termination to subject him to the non-competition provision and prevent him from competing with FTI and Compass. *Id.* at 4 n.1, 7 (quoting ECF 114-2, *Orszag*, No. 8:23-cv-3200-PJM). Orszag further alleges that FTI and Gunby "sought to leverage the sham litigation to prevent [him] . . . from raising funds for, launching, or attracting employees to a new venture." *Id.* at 7. These actions, Orszag claims, constituted a breach of his employment agreement, tortiously interfered with his business relations, and unjustly enriched FTI and Gunby. *Id.* After "sitting on the sidelines for a year while litigating the lawsuit against FTI and [Gunby]," Orszag founded Econic Partners, LLC, an economic consulting firm and a competitor to Compass. *Id.* at 5.

On November 4, 2025, Orszag served a Rule 45 subpoena on non-party CRA—an economic consulting firm based in Massachusetts and direct competitor to both Compass and Econic—after learning that CRA "negotiated with and made lucrative job offers to several senior Compass Lexecon leaders in Europe" between late 2023 and early 2025. ECF 2, at 5; s*ee* ECF 2-2, at 13-14; ECF 14, ¶ 1. That subpoena seeks five categories of documents and communications

concerning CRA's potential employment of three Compass executives—Lorenzo Coppi, Neil Dryden, and Jorge Padilla—and certain economic models and data owned by CRA. *See* ECF 2-2, at 13-14. First, it seeks "[a]ll [c]ommunications between and among [two particular CRA executives] . . . and any of Coppi, Dryden, and Padilla . . . concerning potential employment at" CRA. ECF 2-2, at 13. Second, it requests documents sufficient to identify any calls or meetings between certain CRA executives and Coppi, Dryden, or Padilla concerning potential employment at CRA. *Id.* Third, it seeks any documents and communications "concerning any formal or informal offers of employment that [CRA] made to any of Coppi, Dryden, and Padilla, [i]ncluding discussions of any bonus or other economic compensation" offered. *Id.* Fourth, it requests "[a]ny modeling . . . or tracking [CRA] undertake[s] concerning the business or financial performance of operating results of other economic consulting companies . . . and any comparison of such performance to that of [CRA]." *Id.* at 14. And fifth, it seeks documents "sufficient to show the economic impact of the launch of Econic Partners" on the compensation paid by CRA to retain or hire economic consultants. *Id.*

On December 5, 2025, CRA served a written objection to the subpoena, asserting that "the documents sought were not relevant or likely to lead to admissible evidence, the requests were over broad and unduly burdensome, [and] the requests sought highly confidential and proprietary commercial documents and information from a direct competitor" that is not party to the underlying litigation. ECF 14, ¶ 4; *see* ECF 2-3. Notwithstanding its objections, CRA agreed to produce a limited set of materials, including (1) emails without confidential, proprietary, or confidential trade secret materials or potential employment terms; (2) emails and calendar invites identifying the dates of the calls or meetings between CRA executives and Coppi, Dryden, or

Padilla; and (3) "a note concerning a discussion responsive to [request number three]." ECF 2-3, at 3-4.

On December 29, 2025, CRA "made a small production" that, Orszag contends, consisted "almost entirely of non-substantive scheduling emails and calendar invites and a handful of heavily redacted communications." ECF 2 at 8. The next day, Orszag informed CRA that its production was insufficient. *Id.* After the parties met and conferred twice regarding CRA's obligations, Orszag filed in this Court a motion to compel CRA to comply with requests one, three, and four of the subpoena. *See* ECF 2. CRA opposes Orszag's motion. *See* ECF 14.

## STANDARD OF REVIEW

To justify a motion to compel, the information sought must be: "(1) not privileged; (2) relevant to the claim or defense of any party; and (3) proportional to the needs of the case." *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 176 (D. Mass. 2021) (citation omitted); Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26, which applies to subpoenas issued under Rule 45, also requires the Court to limit discovery when, in pertinent part, "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit," "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26 (b)(1), (b)(2)(C)(i)-(ii); *see Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998). In conducting the balancing required by Rule 26, courts must give "'special weight'" to the "'unwanted burden thrust upon non-parties.'" *Cascade Yarns, Inc. v. Knitting Fever*, *Inc.*, 755 F.3d 55, 59 (1st Cir. 2014) (quoting *Cusumano*,

162 F.3d at 717, and affirming district court's denial of motion to compel because non-party was "a stranger to the underlying litigation").

**DISCUSSION**

Orszag moves to compel CRA to comply with the first, third, and fourth requests of the Rule 45 subpoena. The Court will address each in turn.

**I.   Employment-Related Communications Between CRA and Coppi, Dryden, or Padilla.**

Orszag seeks an order compelling CRA to comply with his first request for production seeking all communications "between and among" certain CRA and Compass executives "concerning potential employment at" CRA. ECF 2-2, at 13. In particular, Orszag seeks the information that Coppi, Dryden, and Padilla shared with CRA about their revenue generation and compensation at FTI during their employment negotiations. *Id.* These communications, Orszag contends, are relevant to FTI's claim that he misused its confidential information in violation of his contractual and fiduciary duties, because the communications would reveal that other Compass executives shared the same information with CRA without consequence.

CRA does not dispute that the requested communications are relevant but argues that their limited relevancy is outweighed by its interest in the confidentiality of its records. CRA "does not have any written communications from Dryden, Coppi or Padilla in which they shared information concerning FTI revenue generation with CRA." ECF 14, at 9; *see* ECF 14-1, ¶ 6. The only documents in CRA's possession that are responsive to Orszag's request include "a few internal emails among CRA employees and documents that contain information orally provided to CRA from Coppi and Dryden about their respective revenue generation at FTI," as well as "confidential and proprietary CRA information" not relevant to the underlying litigation. ECF 14-1, ¶ 10. Disclosing those emails to direct competitors, CRA argues, would cause substantial harm to its

business while providing only limited evidentiary value to Orszag, because emails discussing what Dryden and Coppi said to CRA about FTI are hearsay, and the information Orszag seeks can be obtained by deposing Coppi and Dryden.

CRA's arguments about hearsay are unavailing. Even if CRA is correct that the emails would constitute inadmissible hearsay, Rule 26(b)(1) provides that "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Whether disclosure is unwarranted because Orszag can obtain the information it seeks from depositions of Coppi and Dryden is a closer issue. On the one hand, the mere fact that a party can potentially obtain—or has obtained—certain discoverable information via deposition does not, on its own, immunize all other sources of that information from discovery under Rule 26. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring discovery limitations where "the discovery sought is *unreasonably* cumulative or duplicative" (emphasis added)). On the other hand, Rule 26 requires courts to limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.*

Having considered the parties' arguments, the Court will require CRA to disclose documents responsive to Orszag's first request insofar as they contain information provided to CRA by Coppi, Dryden, or Padilla, but CRA will be permitted to redact confidential information not relevant to the underlying litigation. Information that Coppi, Dryden, or Padilla shared with CRA has direct relevance to Orszag's defense in the underlying litigation and would not be unduly burdensome to produce. The Court rejects Orszag's further request that CRA's responsive documents contain no redactions. In Orszag's view, CRA has failed to explain why the extraneous information in CRA's internal communications is confidential or why the protective order in the underlying litigation is insufficient to protect that information. But Orszag, as the moving party,

has offered no argument as to why CRA's internal communications concerning matters *other than* what Coppi, Dryden, or Padilla shared with CRA are relevant to his claims or defenses in the underlying litigation. Nor does the Court see any basis to compel CRA to disclose that information. Accordingly, CRA will be allowed to redact those communications that are beyond the scope of discovery under Rule 26.

## II.    Employment Offers to Coppi, Dryden, or Padilla.

Orszag next asks the Court to compel CRA to produce any documents and communications "concerning any formal or informal offers of employment that [CRA] made to any of Coppi, Dryden, and Padilla, [i]ncluding discussions of any bonus or other economic compensation" they would receive in the event any other Compass employee joined CRA. ECF 2-2, at 13. This information, Orszag contends, is relevant to the underlying litigation because FTI claims that its damages include higher expenses paid in retention costs and increased salaries for Compass executives who renegotiated their compensation with Compass after Orszag launched Econic.

CRA responds that no written job offers were made to Dryden, Coppi, or Padilla. Instead, CRA explains, any responsive documentation CRA possesses would be in the form of internal communications also containing confidential information, such as CRA's decision-making process, methodology, and considerations concerning potential offers or terms of offers under discussion with Dryden and Coppi.[2] CRA argues, and the Court agrees, that those internal communications are not, standing alone, relevant to FTI's damages claim. That is for a simple reason: for those internal communications to have affected FTI's renegotiation of the Compass executives' salary, there must be some further evidence that Dryden or Coppi told Compass or FTI

---

[2] CRA does not address whether any non-written offer was made to Padilla in its opposition but attests that it "had no such discussions with Padilla." ECF 14-1, ¶ 8; *see* ECF 14, at 11-12.

8

about the terms suggested by CRA. Orszag offers no argument or evidence to make that conceptual link.[3] But even if Orszag had such evidence, the Court agrees that requiring CRA—a competitor of FTI and Econic—to disclose its confidential internal communications regarding potential offer terms to Dryden and Coppi is unduly burdensome and not warranted, where Orszag can obtain that information from depositions of Dryden and Coppi. Dryden and Coppi would, of course, be in the best position to know (1) whether CRA shared potential offer terms with them, and (2) whether they, in turn, communicated the substance of those potential terms to FTI. The Court will not, accordingly, compel CRA to disclose documents concerning any offers or employment terms communicated to Dryden, Coppi, or Padilla.

## III.    CRA's Internal Models and Tracking.

Orszag finally moves to compel CRA to comply with his fourth request for production, which seeks any "modeling [CRA] perform[s] or tracking [it] undertake[s] concerning the business or financial performance or operating results of other economic consulting companies . . . and any comparison of such performance to that of" CRA. ECF 2-2, at 14. In Orszag's view, these CRA models—that allegedly used publicly available data to model competitor performance using "the same type of analysis" he has used—are relevant. ECF 2, at 13. His relevancy argument is as follows: to defend against FTI's claim that he improperly used Compass's confidential information to build a financial model for attracting investors for Econic, he must demonstrate that he used

---

[3]

only publicly available information and deployed the "exact same modeling" used by competitors in the industry like CRA. *Id.* CRA's comparable models, Orszag insists, are therefore relevant to his defense insofar as CRA's "ability to perform the same analysis" using publicly available data "directly refutes FTI's assertions that [he] misused confidential information or trade secrets in creating any such models." *Id.* CRA does not contest the relevancy of this category of modeling but argues "that it did not perform modeling using the same method and data Orszag says he used for his modeling of competitors" and thus has nothing to produce. ECF 14, at 15; *see* ECF 14-1, ¶¶ 12-13. Orszag, in response, attempts to broaden his relevancy argument, contending that CRA's "modeling need not be identical to [his] to be relevant," so long as CRA "model[s] the performance of [its] competitors using publicly available information." ECF 24, at 5.

The Court will assume, without deciding, that CRA's modeling, even if not identical to Orszag's, is relevant to the underlying litigation. Even so, the Court agrees with CRA that compelling it to disclose its economic modeling to two of its direct competitors is not warranted. Its internal modeling of the performance of other economic consulting companies, even if based on publicly available data, constitutes confidential and proprietary information. The harm of requiring disclosure of that information significantly outweighs whatever benefit Orszag stands to gain, especially where Orszag can obtain the evidence he seeks from other sources, including expert or party testimony and discovery. Orszag fails to articulate why CRA's models—as opposed to any other available evidentiary source—are necessary for his argument. This failure is fatal where, as here, disclosure poses a significant burden to the entity resisting discovery and that entity is not a party to the underlying litigation. *See Cascade Yarns*, 755 F.3d at 59. Orszag's motion to compel CRA to disclose its economic models will, accordingly, be denied.

## CONCLUSION AND ORDERS

For the foregoing reasons, Orszag's motion to compel, ECF 2, is GRANTED in part and DENIED in part. The motion is DENIED as to Orszag's third and fourth requests for production. The motion is GRANTED as to Orszag's first request for production, and CRA is hereby ORDERED to disclose any communications responsive to that request, but CRA may redact confidential information not relevant to the underlying litigation.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: April 15, 2026                    UNITED STATES DISTRICT JUDGE

11